UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Michelle G.,

                    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

                    Defendant.

_____/

Case No. 23-10387

Linda V. Parker
United States District Judge

Curtis Ivy, Jr.
United States Magistrate Judge

**REPORT AND RECOMMENDATION
CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 12, 13)**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), challenging the

final decision of Defendant Commissioner of Social Security ("Commissioner")

denying her applications for Disability Insurance Benefits and Supplemental

Security Income under the Social Security Act.  This matter is before the United

States Magistrate Judge for a Report and Recommendation on Plaintiff's motion

for summary judgment (ECF No. 12), the Commissioner's cross-motion for

summary judgment (ECF No. 13), Plaintiff's reply (ECF No. 15) and the

administrative record (ECF No. 6).

For the reasons below, it is **RECOMMENDED** that the Court **DENY**

Plaintiff's motion for summary judgment (ECF No. 12), **GRANT** Defendant's

motion for summary judgment (ECF No. 13), and **AFFIRM** the Commissioner's decision.

## I.   DISCUSSION

### A.   Background and Administrative History

Plaintiff alleges her disability began on May 6, 2020, at the age of 40.  (ECF No. 6-1, PageID.38).  On August 7, 2020, she applied for disability insurance benefits and supplemental security income.  (*Id.*).  In her disability report, she listed one medical condition that limits her ability to work: Crohn's Disease.  (*Id.* at PageID.305).  Her application was denied on December 3, 2020.  (*Id.* at PageID.38).

Following the denial, Plaintiff requested a hearing by an Administrative Law Judge ("ALJ").  On March 2, 2022, ALJ Brian Burgtorf held a telephonic hearing, at which Plaintiff and a vocational expert testified.  (*Id.* at PageID.59-89).  On March 15, 2022, the ALJ issued an opinion, which determined that Plaintiff was not disabled within the meaning of the Social Security Act.  (*Id.* at PageID.38-52).  Plaintiff later submitted a request for review of the hearing decision.  On December 16, 2022, the Appeals Council denied Plaintiff's request for review.  (*Id.* at PageID.19-23).  Thus, the ALJ's decision became the Commissioner's final decision.

Plaintiff timely commenced the instant action on February 14, 2023.

**B.** **The Administrative Decision**

Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), at **Step 1** of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 6, 2020, the alleged onset date. (ECF No. 6-1, PageID.41). At **Step 2**, the ALJ found that Plaintiff had the following severe impairments: Crohn's Disease/Crohn's colitis; irritable bowel syndrome; anemia; depression; and anxiety. (*Id.*). At **Step 3**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (*Id.* at PageID.41-44). **Between Steps 3 and 4** of the sequential process, the ALJ evaluated Plaintiff's residual functional capacity ("RFC")[1] and determined that Plaintiff had the RFC:

> to perform light work . . . except she can never climb ladders, ropes, and scaffolds, but she can climb ramps and stairs occasionally. The claimant is able to crawl occasionally. The claimant is able to stoop, kneel, and crouch. The claimant is unable to work around hazards, such as unprotected heights and unguarded/unprotected moving mechanical parts. She is able to understand, remember, and carry out simple instructions and make simple work-related decisions. The claimant is unable to work at a production rate pace, such as on an assembly line. The claimant is limited to performing indoor work only. The claimant will be off-task for 10% of every workday.

---

[1] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

(*Id.* at PageID.44-50).  At **Step 4**, the ALJ determined that Plaintiff was unable to perform any past relevant work.  (*Id.* at PageID.50).  At **Step 5**, considering Plaintiff's age, education, work experience, and RFC, the ALJ determined there were existing jobs in significant numbers within the national economy that Plaintiff could perform, such as office clerk and food preparer.  (*Id.* at PageID.50-51).  The ALJ therefore concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, from May 6, 2020 through the date of the decision.

### C.   Framework for Disability Determinations

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; (4) can return to past relevant work; and (5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §§ 404.1520, 416.920.[2]  The

---

[2] Citations to the regulations or Social Security Rulings are to those effective on the date of the application for disability benefits or the ALJ's decision, where appropriate, unless otherwise indicated.

Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that there is work available in the national economy the claimant can perform. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) ("[D]uring the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five.") (citing *Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 148 (6th Cir. 1990)).

### D.   Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In deciding whether substantial evidence supports the ALJ's decision, the

court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Even so, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

E.   **Analysis**

Plaintiff's arguments on appeal deal with symptoms related to her Crohn's disease and how her mental impairments of anxiety and depression impact her

symptoms.  She argues that the ALJ mischaracterized the evidence or ignored evidence, and, based on the inaccurate representation of the evidence, erroneously found Plaintiff's subjective statements not entirely consistent with the record.  She contends that the ALJ failed to address the impact her mental impairments have on her gastrointestinal symptoms, did not evaluate Plaintiff's ability to work on a sustained basis, and did not articulate how he considered the severity of Plaintiff's impairments.

    1. ALJ's Treatment of the Evidence

  The record contains the following evidence on Plaintiff's bowel and mental health issues.  Plaintiff testified about how her gastrointestinal symptoms impact her daily life.  She described starting her day by going to the bathroom, having to stop during a drive to work or elsewhere to go to the bathroom, sometimes wearing a diaper in case of an accident while driving, and being interrupted by bathroom urgency during household chores.  (ECF 6-1, PageID.67-73).  She said that on a bad day, she would go to the bathroom 8-10 days a day.  (*Id.* at PageID.73).  At the hearing, Plaintiff submitted a "bathroom symptom chart," which is a diary of her bathroom use from January 20, 2022 to March 1, 2022.  (*Id.* at PageID.420-23).  She recorded using the bathroom 1-3 times a day, for only a few minutes and up to around 30 minutes at a time.

Plaintiff's former employer provided a statement about how Plaintiff's work performance declined when her Crohn's Disease caused her to use the bathroom often.  Ms. Richardson stated that Plaintiff began working with her in 2017 and was a critical part of the team.  In mid-September 2017, Plaintiff began to change. "[O]ver the years something was off."  (*Id.* at PageID.420).  In January 2019, Plaintiff was given a second job performance warning.  After that, Ms. Richardson and others noticed Plaintiff was forgetful and "constantly spending time in the restroom" or was unable to go to work.  Plaintiff was terminated from the position before the relevant period.  (*Id.*).

Plaintiff has taken several medications to treat Crohn's Disease, including Humira injections, steroids, and Entyvio infusions (after a pause in infusions because of an insurance issue, she resumed in May 2020).  (*See id.* at PageID.902, 914).

In May 2020, Plaintiff presented to the emergency department complaining of diarrhea and abdominal pain.  She said she was having up to 15 bowel movements a day for the past two weeks.  She was admitted with acute renal failure, severe hyponatremia, and an acute exacerbation of Crohn's Disease.  (*Id.* at PageID.765).  As her blood levels began to normalize, she developed metabolic encephalopathy and experienced pressured speech, tangential thought, and periodic

disorientation or delirium.  Neurology and psychiatry determined that her mental status was likely caused by her underlying illness.  (*Id.*).

According to treatment records, her symptoms improved after the hospitalization.  The next month, she reported to her gastroenterologist, Dr. McCrone, that she was doing "quite well."  (*Id.* at PageID.902).  In August 2020, she was "doing much better" since her hospitalization.  (*Id.* at PageID.932).  During the August 2020 visit, Plaintiff reported having loose stools in the morning, which she attributed to stress.  (*Id.* at PageID.1249).  In December 2020, Plaintiff reported that the Entyvio infusions were "very effective" in managing her symptoms.  She reported having 3-4 bowel movements a day.  (*Id.* at PageID.1509).  But on December 9, 2020, she presented to an emergency department with complaints of Crohn's disease exacerbation.  She was having episodes of bleeding diarrhea.  (*Id.* at PageID.1346).  She was given steroid medication to treat her symptoms.  (*Id*. at PageID.1350).

Although, as the ALJ noted, there was an increase in symptoms in December 2020, records from 2021 and 2022 show symptom control.  In March 2021, she reported intermittent loose stool and cramping abdominal pain, and denied incontinence.  (*Id.* at PageID.1401, 1404).  This kind of report is largely repeated throughout 2021.  For example, at her September, November and December 2021

infusion appointments, Plaintiff denied experiencing diarrhea and nausea. (*Id.* at PageID.1635, 1640, 1645).

On February 3, 2022, Dr. McCrone completed a Crohn's and Colitis Residual Functional Capacity Questionnaire. He listed chronic diarrhea, bloody diarrhea, abdominal pain and cramping, malaise, and fatigue as Plaintiff's symptoms. (*Id.* at PageID.1664). He opined that emotional factors contributed to Plaintiff's symptoms. (*Id.* at PageID.1665). Specifically, he noted that stress impacts her symptoms. (*Id.* at PageID.1666). Because of the impact of stress on her symptoms, he checked boxes that state that Plaintiff would be both capable and incapable of working a low-stress job. (*Id.*). Neither party addressed this inconsistency in their briefs. The ALJ, perhaps giving Plaintiff the benefit of the doubt, interpreted the opinion as saying that Plaintiff was incapable of even low-stress jobs. (*Id.* at PageID.49). Dr. McCrone said Plaintiff would need "6-8?" unscheduled restroom breaks, and that those breaks would last an unknown amount of time. (*Id.* at PageID.1666). It is unclear why Dr. McCrone included a question mark with his statement that Plaintiff would need 6-8 breaks per day. Finally, he said Plaintiff would miss more than four days of work per month because of her symptoms. (*Id.* at PageID.1667). The attached February 2022 treatment note includes Plaintiff's statement that she was doing "ok" and was having diarrhea and fecal urgency "most days" and 3-5 bowel movements. (*Id.* at PageID.1668).

Despite this narrative of Plaintiff's complaints, the treatment note states that Plaintiff denied abdominal pain, nausea, diarrhea, and fecal incontinence.[3]  (*Id.* at PageID.1672).  Dr. McCrone reviewed recent testing which showed no signs of inflammation, which suggested that Plaintiff "should have good/great symptom control from her Crohn's standpoint."  (*Id.* at PageID.1673).  That said, he also noted his concern that Plaintiff's bowel issues were related to "worsening anxiety and IBS."  (*Id.*).  Plaintiff was advised to double her dose of fiber in the morning and discuss anxiety treatment with her primary care physician.  (*Id.*).

The ALJ found Dr. McCrone's opinion unpersuasive, finding it inconsistent with the preponderance of the evidence and with the state agency physicians' opinions.  (*Id.* at PageID.49).  Plaintiff did not challenge that determination.

Contrary to Plaintiff's assertion, the ALJ did not ignore medical evidence that corroborates her statements, and he did not mischaracterize the medical evidence.  After finding numerous severe impairments, the ALJ discussed her May 2020 hospitalization for hyponatremia and Crohn's Disease flare.  (*Id.* at PageID.46).  Then, he noted the records of improvement in Plaintiff's symptoms after the hospitalization.  The ALJ discussed that Plaintiff had "an uptick of

---

[3] The Court can consider evidence not expressly discussed by the ALJ because the Court must consider the record as a whole.  *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).  And the ALJ need not cite or discuss every piece of evidence to have considered all the evidence. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("An ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.").

symptoms" in early December 2020, but also that records from 2021 and 2022 showed that symptoms continued to improve. He mentioned unremarkable findings in treatment records and Plaintiff's reports of doing "ok" with her Crohn's Disease. Lastly, he addressed the medical evidence on Plaintiff's mental impairments. Most medical records were unremarkable. While Plaintiff was hospitalized in May 2020, as discussed above, she experienced delirium and other severe mental symptoms that were thought to be related to the emergent physical issues for which she was hospitalized. (*Id.* at PageID.47-48). The ALJ's recitation of the medical evidence is consistent with the medical records.

There is one error in the ALJ's discussion of her testimony that Plaintiff argues is cause for remand. As noted, Plaintiff testified that during a Crohn's flare, she uses the bathroom 8-10 times a day. The ALJ treated the testimony as stating that she has 8-10 bowel movements a day, not just during a flare. (*Id.* at PageID.45). This mistake is perhaps a misreading of the transcript. The ALJ found that Plaintiff's bathroom diary did not show bathroom use 8-10 times per day. Later in the decision, the ALJ concluded that, although the evidence does not support Plaintiff's allegation that she must use the bathroom 8-10 per day, the evidence supported such high use during an acute Crohn's flare, like in May 2020. (*Id.* at PageID.46). This mistake is harmless error and does not require remand. Plaintiff treats the mistake as the sole reason why the ALJ found her subjective

statements inconsistent with the evidence, but that is an oversimplification of the ALJ's decision.  The ALJ did not rely on the inconsistency between 8-10 bathroom breaks per day and the 1-3 bathroom breaks in the diary to find her statements inconsistent with the evidence.  Rather, the ALJ spent the next five paragraphs discussing other bowel-related evidence that does not support the need for a large number of bathroom breaks per day.  (*Id.* at PageID.45-46).  That evidence is substantial evidence inconsistent with Plaintiff's testimony (as discussed more fully below).  *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012) (Finding that, as long as the ALJ cites substantial evidence to support factual conclusions, a factual error does not require remand, and holding that "harmless error analysis applies to credibility determinations in the social security disability context.").  Additionally, although the ALJ mistakenly said Plaintiff testified to using the bathroom 8-10 per day, the ALJ was correct in noting that she uses the bathroom that frequently on a bad day during a Crohn's flare.  (*Id.* at PageID.46). Thus, in acknowledging that Plaintiff uses the bathroom 8-10 times during a flare, but less on good days, the ALJ accurately depicted the evidence.

> 2. Evaluation of Plaintiff's Subjective Complaints

Plaintiff argues several errors in the ALJ's evaluation of her complaints. She takes issue with the fact that the ALJ dismissed her subjective statements despite Dr. McCrone's February 2022 treatment note indicating that Plaintiff's

bowel issues are related to worsening anxiety and that she had significant daily symptoms.  These observations were made while Plaintiff was receiving the Entyvio infusions that helped her symptoms.  In other words, at a time when her symptoms were being somewhat controlled, her treating gastroenterologist still noted that Plaintiff had "significant daily symptoms."  (ECF No. 12, PageID.1694). She also says her May 2020 hospitalization corroborates her contention that her mental impairments exacerbate her bowel issues.  (*Id.* at PageID.1694-95).  She maintains that her testimony tracks her former employer's statements about how her bowel issues impact her ability to sustain work activity.  (*Id.* at PageID.1695-96).  Finally, she asserts that the ALJ did not explain or sufficiently articulate his reasoning for discounting her subjective statements.  (*Id.* at PageID.1699).  She says there was "no meaningful discussion of the relevant objective medical evidence of record, and other evidence of record, that support [Plaintiff's] statements."  (*Id.* at PageID.1696).

When a claimant alleges symptoms of disabling severity, an ALJ must follow a two-step process for evaluating these symptoms.  *See Moore v. Comm'r of Soc. Sec.*, 573 F. App'x 540, 542 (6th Cir. 2014); *Massey v. Comm'r of Soc. Sec.*, 409 F. App'x 917 (6th Cir. 2011).  First, the ALJ must determine whether there is an underlying medically determinable physical or mental impairment that could

reasonably be expected to produce a claimant's symptoms.  The ALJ here found Plaintiff's impairments could reasonably be expected to produce her symptoms.

Second, the ALJ "must evaluate the intensity and persistence of [the claimant's] symptoms so that [the ALJ] can determine how [those] symptoms limit [the claimant's] capacity for work."  20 C.F.R. § 404.1529(c)(1); *see also* SSR 16-3p, 2016 WL 1119029 (March 16, 2016).  In evaluating a claimant's symptoms at the second step of the analysis, the ALJ must look to medical evidence, statements by the claimant, other information provided by medical sources, and any other relevant evidence on the record.  Beyond medical evidence, the ALJ should consider seven factors.  These factors are: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.  *See* SSR 16-3p, 2016 WL 1119029, at * 7.  The ALJ need not exhaustively discuss each of these factors or all of the evidence in the record but need only acknowledge the factors and

discuss the evidence that supports the decision. *See Renstrom v. Astrue*, 680 F.3d 1057, 1067 (8th Cir. 2012) ("The ALJ is not required to discuss methodically each [factor], so long as he acknowledged and examined those [factors] before discounting a claimant's subjective complaints.") (citation omitted).

Plaintiff argues that the ALJ did not articulate his reasoning for finding her statements inconsistent with the record. The undersigned disagrees. After the introductory statement that Plaintiff's statements are not consistent with the other evidence in the record, the ALJ then discussed the evidence. Through this discussion, the Court can trace the path of the ALJ's reasoning. The ALJ demonstrates that, while Plaintiff has daily Crohn's-related symptoms, those symptoms have largely been controlled since the start of the relevant period. The ALJ noted that Plaintiff would report controlled symptoms, using the restroom 1-3 times per day, and that medication was working to control symptoms. The evidence discussed in the decision conflicts with Plaintiff's subjective complaints. By discussing the medical records, the ALJ was doing more than "merely recit[ing] purportedly benign findings from office visits." (ECF No. 12, PageID.1696). Rather, he was showing how Plaintiff's statements of disabling symptoms were inconsistent with the other evidence in the record. This is the ALJ's obligation.

And contrary to Plaintiff's contention, the ALJ did not ignore corroborating evidence.[4]

The ALJ did not, as Plaintiff suggests, ignore evidence that corroborates her statements. The ALJ expressly discussed her May 2020 hospitalization, but also that her symptoms continued to improve afterward. He addressed the "uptick" in symptoms in December 2020, but also throughout 2021 Plaintiff was reportedly doing well and there are no medical records showing otherwise.

Plaintiff asserts that her testimony aligns with her former employer's statement. That statement essentially says Plaintiff was fired for forgetfulness, concentration issues, and spending considerable time in the bathroom. The ALJ discussed Ms. Richardson's statement. (ECF No. 6-1, PageID.49). He did not evaluate the persuasiveness of the statement because it is a third-party non-medical statement. Plaintiff argues that the ALJ needed to do more than merely consider it. She says the Court cannot take the ALJ's word that he considered the statement; rather, he needed to discuss how he treated the statement or how it factored into his analysis. (ECF No. 12, PageID.1699-1700).

---

[4] Plaintiff is, to an extent, asking the Court to reweigh the evidence and come to a different conclusion. As explained above, the Court does not reweigh the evidence, and even if the Court would conclude differently than the ALJ, The ALJ's decision is upheld so long as it is supported by substantial evidence.

First, Ms. Richardson's submission is a statement about Plaintiff's work performance before the relevant period; it is not an opinion on Plaintiff's ability to work during the relevant period.  Plaintiff did not explain why her functioning before the relevant period is indicative of her functioning during the relevant period, given that the relevant medical records largely show symptom control.  *See, e.g.*, *Dyson v. Comm'r of Soc. Sec.*, 786 F. App'x 586, 589 (6th Cir. 2019) ("Dyson's diagnosis with an ailment in (or before) 2005 does not mean that ailment impaired him between December 31, 2007 and March 21, 2008.").  ALJs are not required to articulate how they considered each piece of evidence, so Plaintiff's assertion that the ALJ needed to do more than describe the statement and say that he considered it is not well taken.  *Boseley v. Comm'r of Soc. Sec. Admin.*, 397 F. App'x 195, 199 (6th Cir. 2010) (citing *Kornecky*, 167 F. App'x at 507-08) (ALJs are not "required to discuss each piece of data in its opinion, so long as they consider the evidence as a whole and reach a reasoned conclusion.").

ALJs are required to consider opinion evidence.  But even if the statement were a nonmedical opinion on Plaintiff's ability to work, Plaintiff's argument is somewhat at odds with the regulations.  The regulations concerning how ALJs consider opinion evidence expressly exclude a requirement that ALJs articulate how they considered evidence from nonmedical sources using the factors for assessing medical opinions.  20 C.F.R. §§ 4004.1520c(d), 416.920c(d).

Admittedly, the regulatory language leaves unclear exactly how an ALJ is to articulate consideration of nonmedical sources. *See Giddings v. Comm'r of Soc. Sec.*, 2022 WL 2612040, at *11 (N.D. Ohio May 13, 2022) ("The revised regulations leave a void regarding how an ALJ is to articulate his consideration of an opinion from a nonmedical source or one who is not considered an acceptable medical source."). But absent authority from Plaintiff dictating a specific means of articulation, the undersigned concludes that the ALJ's description of Ms. Richardson's statement and his acknowledgment that he considered it is sufficient.

As for Plaintiff's mental impairments, she argues that the ALJ did not address the impact of those impairments on her Crohn's disease symptoms, and thus the decision should be remanded. In evaluating Plaintiff's subjective complaints, the ALJ was required to assess factors that aggravate Plaintiff's symptoms. Plaintiff says there is evidence showing a correlation between her mental functioning and bowel issues such as her May 2020 hospitalization and office visits where she was noted to exhibit depression and anxiety. She also points to her own statements. (ECF No. 12, PageID.1694-95). Essentially, she argues that the ALJ ignored mental impairments that aggravate her bowel issues.

As an initial matter, the undersigned is not convinced that the medical evidence shows that stress or anxiety aggravates her bowel issues. During her May 2020 hospitalization, she experienced delirium and disorientation. (ECF No. 6-1,

PageID.765).  The discharge summary states that neurology and psychiatry "felt this was likely delirium due to her underlying illness and so this is expected to improve as her Crohn's, hyponatremia and acute kidney injury improved."  (*Id.*). What this says is that Plaintiff's mental issues during that hospitalization were caused by Crohn's flare-up and hyponatremia, not the other way around.  So the ALJ's failure to address how her mental state during the hospitalization impacts her bowel issues was not an error.

As for medical records noting depression and/or anxiety at treatment visits, these records (save one) do not link stress and anxiety and bowel issues.  The only record Plaintiff points to is Dr. McCrone's February 2022 treatment note in which he says he is concerned that Plaintiff's bowel issues are related to worsening anxiety.  (*Id.* at PageID.1673).  Dr. McCrone's concern is not substantial evidence that mental impairments cause worsening bowel symptoms.  Another record she cites from January 2020 documents Plaintiff's bowel complaints and diagnoses of depression and anxiety, but it does not draw a connection between the impairments.  (*Id.* at PageID.1058-59).  Plaintiff contends that Ms. Richardson's statement also supports the impact of depression and anxiety on bowel issues (ECF No. 12, PageID.1695), but Ms. Richardson did not mention that depression and anxiety caused Plaintiff to go to the bathroom more often.  Instead, she discussed that Plaintiff became forgetful and had a hard time focusing and remembering

tasks as well as disruptively using the bathroom. Thus, it is unclear how this statement supports Plaintiff's allegations.

The ALJ considered Plaintiff's depression and anxiety and found them to be severe impairments. Despite finding these impairments severe, the ALJ noted that the medical evidence demonstrated generally intact mental functioning. For instance, in September 2021, Plaintiff's depression and anxiety were noted to be situational. As discussed, Plaintiff's citations to the hospitalization and the January 2020 record do not support her statements. Still, to accommodate the severe mental impairments, the ALJ limited Plaintiff to performing simple tasks with simple work-related decisions. He also allowed for Plaintiff to be off-task 10% of the workday to account for concentration difficulties. (ECF No. 6-1, PageID.48). Plaintiff has the burden to prove, through evidence, that she is disabled. It is her burden to bring forth evidence establishing that depression and anxiety negatively impact her bowel issues. She marshaled no evidence "of the possible effect of anxiety" on her symptoms. (ECF No. 12, PageID.1698). Thus, the ALJ's failure to marshal any such evidence cannot be error. Moreover, even if Dr. McCrone's February 2022 statement that her symptoms might be caused by worsening anxiety constituted substantial evidence, the ALJ cited substantial evidence in support of the decision that Plaintiff's subjective statements are not consistent with the record as a whole. *Griser v. Comm'r of Soc. Sec.*, 721 F. App'x 473, 478 (6th Cir. 2018);

*see also Dyson*, 786 F. App'x at 589 ("None of Dyson's records shed light on his level of impairment during that relevant time. And the evidentiary burden is Dyson's to carry."). The Court cannot remand the matter to the Commissioner if substantial evidence supports the ALJ's decision, even if it would have come to a different conclusion.

In sum, the undersigned finds no reversible error in the treatment of Plaintiff's subjective complaints. *See, e.g.*, *Jennifer G. v. Comm'r of Soc. Sec.*, 2022 WL 2948953 (S.D. Ohio July 26, 2022) (finding no error in ALJ's treatment of subjective complaints in case with arguments similar to Plaintiff's).

### 3.    Ability to Sustain Work Activity

The final issue to address is whether the ALJ adequately accounted for Plaintiff's ability to sustain work activities despite her symptoms. Plaintiff questions whether the RFC accurately reflects her bowel symptoms and limitations such that she could work an eight-hour day, five days a week. (ECF No. 15, PageID.1734, 1736). She insists that the RFC does not account for the need for frequent breaks or breaks lasting longer than usual to change clothes and clean up if she has an accident. (*Id.* at PageID.1737). According to Plaintiff, allowing her to be off-task for 10% of the workday is neither a genuine nor reasonable accommodation for her symptoms because her 3-5 bowel movements in a day would be work preclusive. (*Id.* at PageID.1738-39).

There is nothing inherently inconsistent with working an eight-hour day and having 1-3 bowel movements during the day (as reported in the bathroom diary). Many entries in the diary reflect bowel movements outside of an eight-hour period. (ECF No. 6-1, PageID.421-22).  Put another way, there is no evidence or express statement from Plaintiff that her reported 1-3 or 3-5 bowel movements per day occurs during a single eight-hour period in the day.  So her suggestion that 3-5 bowel movements in a day is necessarily work-preclusive is unsupported.  As she acknowledges, a normal workday includes two 15-minutes breaks and a 30-minute meal break.  This potentially allows for three bowel movements during the workday.  In addition, the ALJ allowed for Plaintiff to be off-task for 10% of the workday to account for an additional bathroom break if needed.  As addressed above, the ALJ did not reversibly err in discounting Plaintiff's subjective complaints of work-preclusive, disabling symptoms.  Instead, he credited that Plaintiff has gastrointestinal issues that cause bowel movements a few times a day with occasional flares, based on the evidence in the record.

Plaintiff says the question is "whether an individual with such a condition and such symptoms can do their job and remain employed."  (ECF No. 12, PageID.1692).  It is Plaintiff's burden to prove that, with her symptoms, she could not do her job and remain employed.  It was not the ALJ's burden to prove or disprove her case.  The ALJ's decision that Plaintiff can sustain work activity with

her residual functional capacity is supported by substantial evidence.  The Court will not reweigh the evidence, nor would it remand the case if it would have decided the case differently.  The decision should be affirmed.

### F.     Conclusion

Plaintiff has the burden of proof on her statements of error.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).  Plaintiff has not shown legal error that would upend the ALJ's decision.  For all these reasons, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (ECF No. 12), **GRANT** Defendant's motion for summary judgment (ECF No. 13), and **AFFIRM** the Commissioner of Social Security's decision.

## II.    PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

*Teachers Loc. 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: February 12, 2024

s/Curtis Ivy, Jr.
Curtis Ivy, Jr.
United States Magistrate Judge